2003 UT 24

**STATE of Utah, Plaintiff and Appellee,**

v.

**John Vincent PRITCHETT, Defendant and Appellant.**

No. 20010498.

Supreme Court of Utah.

May 13, 2003.

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., James M. Cope, J. Kevin Murphy, Salt Lake City, for plaintiff.

Ronald J. Yengich, Vanessa Ramos–Smith, Salt Lake City, for defendant.

RUSSON, Justice:

¶ 1 John Vincent Pritchett ("Pritchett") appeals his conviction for aggravated sexual abuse of a child, a first degree felony in violation of Utah Code Ann. § 76–5–404.1(3)(j) (1999). The trial court sentenced Pritchett to the statutory term of five years

to life, but stayed execution of the sentence pending disposition of this appeal.

## BACKGROUND

### I. FACTS

¶ 2 The facts are recited in a light most favorable to the jury verdict.

¶ 3 On September 22, 1998, Pritchett spent the day with nine-year-old B.B., her mother G.B., and B.B's younger brother and sister. Pritchett had known the family since B.B. was five months old. The group went out for pizza and played in the park and then returned to the Blazor home. The children asked Pritchett to play hide-and-seek, and B.B. was disappointed when he declined. After watching television for a while, the children asked Pritchett to spend the night at the house, and he agreed to stay until the children fell asleep.

¶ 4 The children's rooms were being renovated, so G.B. prepared the sofa bed for the children to sleep on in the living room. The mattress on the sofa bed was encased in plastic and made noise whenever anyone sat or moved on it. After the children were in bed, Pritchett sat on the edge of the sofa bed and talked with G.B. until she fell asleep on another couch a few feet away. G.B. later testified that she was not expecting Pritchett to join B.B. and the other children on the sofa bed, but that she was waiting for him to leave. Sometime before 10:30 p.m., Pritchett is alleged to have awakened B.B. by repeatedly pulling her underpants down to her knees and penetrating her vagina with his index and middle fingers. G.B., who was on the couch asleep about three to five feet away, did not hear anything. B.B. did not say anything during the alleged incident, but made what she later described as a "leave me alone" sound. B.B. did, however, scratch Pritchett on the back with the claws of her pet turtle because she was mad at him.

¶ 5 Around 10:30 p.m., G.B. awoke when she heard water running and saw the living room light on. Pritchett was in the bathroom, and G.B. saw B.B. tucked into the corner of the sofa bed holding her turtle. G.B. asked B.B. why she was awake, and B.B. replied that she wanted Pritchett to leave and never come back. When Pritchett came out of the bathroom, he was wearing only his pants, and his shirt was on the floor by the sofa bed. G.B. told Pritchett that it was time for him to leave, and they went out to the front porch and talked for a few minutes. While they were on the porch, B.B. made a "hate and like note," listing names of people she liked on one side of a piece of paper and names of those she did not like on the other. B.B. put Pritchett's name on the "hate" side of the list. She said nothing else to her mother that night.

¶ 6 At school the next day, September 23, B.B. attended an assembly where she saw a video about child molestation and the differences between "good touches and bad touches." In the car on the way home from school, B.B. told G.B. that Pritchett had touched her "private areas" and that Pritchett's "private touched hers and that he put it inside hers." B.B. also told her mother that she wanted her to call the police, but G.B. wanted to call the family doctor first. On the doctor's instructions, G.B. took B.B. to Primary Children's Hospital where she was examined on September 24 by Dr. Kadish ("Kadish") and interviewed by a police detective. Kadish concluded that B.B.'s genital examination was normal, but he could not "rule out the possibility of sexual abuse as the tissues may heal or not be injured in many cases of inappropriate touching."

¶ 7 Pritchett denies touching B.B.'s vaginal area with either his hand or his penis. He says that he joined the children on the sofa bed so that they would go to sleep. He claims that B.B. kept getting up to play with her turtle and that after he told her mother as much, G.B. told B.B. to go back to sleep, even "screaming" at her at one point to put the turtle away and go to bed. Pritchett says that the scratches were the result of B.B. putting the turtle on his back while she was playing. He denies ever removing his shirt and says that he left the house because B.B. was not going to sleep. A forensic nurse, Su Bryner–Brown ("Bryner–Brown"), testified at trial that if Pritchett had had intercourse with B.B., Kadish's examination would have shown extensive trauma. Bryner–Brown did agree, however, that it would

be possible for a child who had a penis rub her labia to have a normal exam. The nurse testified, in fact, that physical findings are rare in child molestation cases.

## II. PROCEDURAL HISTORY

¶ 8 At trial, the State elicited testimony from G.B., over repeated defense objections, about changes in B.B's behavior, how B.B. was not the same child as before, and why the family had moved out of state. Arguing that continued questioning about B.B.'s changed behavior constituted prosecutorial misconduct, Pritchett's defense counsel made a motion for mistrial, which the trial court subsequently denied. The trial court also allowed B.B. to refresh her memory by reviewing a transcript of the preliminary hearing, which contained her testimony of Pritchett penetrating her vagina with his fingers and his penis. Under initial direct examination, B.B. was unable to testify to anything other than Pritchett pulling down her underpants several times. After reviewing the transcript, she testified that Pritchett touched and penetrated her vagina with his fingers, but she could not testify that he touched or penetrated her vagina with his penis.

¶ 9 Following the State's case, the defense moved for dismissal of both charges against Pritchett, count I, rape of a child, a first degree felony in violation of Utah Code Ann. § 76–5–402.1 (1999), and count II, aggravated sexual abuse of a child, a first degree felony in violation of Utah Code Ann. § 76–5–404.1(3)(j) (1999). The motion was based upon insufficiency of the State's evidence and B.B.'s incompetency to testify because of her lack of memory. The trial court denied the motion. After presentation of Pritchett's defense, the case was submitted to the jury, which acquitted Pritchett on count I and convicted him on count II. The defense moved for arrest of judgment, again arguing insufficiency of the State's evidence, and the trial court also denied that motion. Pritchett now appeals.

## ANALYSIS

## I. PROSECUTORIAL MISCONDUCT

¶ 10 The first issue Pritchett raises on appeal is that the trial court erred in not granting his motion for a mistrial based on prosecutorial misconduct. In *State v. Harmon*, 956 P.2d 262 (Utah 1998), we set forth the standard of review for this issue:

> Because a trial court is in the best position to determine an alleged error's impact on the proceedings, we will not reverse a trial court's denial of a mistrial motion based on prosecutorial misconduct absent an abuse of discretion. This standard is met only if " 'the error is substantial and prejudicial such that there is a reasonable likelihood that in its absence, there would have been a more favorable result for the defendant.' " For purposes of determining whether a mistrial should have been granted, our overriding concern is that defendant received a fair trial.

*Harmon*, 956 P.2d at 276 (quoting *State v. Hay*, 859 P.2d 1, 7 (Utah 1993) (quoting *State v. Gardner*, 789 P.2d 273, 287 (Utah 1989))) (further quotations omitted). Furthermore, this court has held that "[a] prosecutor's comments constitute misconduct when they call the jurors' attention to matters not proper for their consideration and when the comments have a reasonable likelihood of prejudicing the jury by significantly influencing its verdict." *State v. Pearson*, 943 P.2d 1347, 1352 (Utah 1997).

¶ 11 In the present case, Pritchett alleges prosecutorial misconduct because the State continued to elicit testimony at trial from G.B. concerning changes in B.B.'s behavior, how B.B. was not the same child as before, and why the family moved out of state. When the prosecutor began this line of questioning, Pritchett's defense counsel objected that the testimony was irrelevant and hearsay, aimed at improperly bolstering B.B.'s credibility. The trial court requested a bench conference with respective counsel, a record of which does not exist, and subsequently overruled the objection, stating that the question fell "within the parameters of what we discussed here at the bench." The trial court subsequently overruled three more defense objections to questions posed to G.B. about changes in B.B.'s behavior, on grounds that the questions were within the

limits established in the unrecorded bench conference. However, the trial court did sustain—on grounds other than improper bolstering—three other defense objections to questions about B.B.'s changed behavior, ruling that the specific questions were irrelevant, leading, and cumulative.

¶ 12 Pritchett contends that the State's continued line of questioning over defense objections improperly bolstered B.B.'s credibility, thus calling "the jurors' attention to matters not proper for their consideration and ... prejudicing the jury by significantly influencing its verdict." *Id.* Pritchett's argument to this court, however, is merely conclusory, failing both to identify the "matters not proper" for the jury and to explain how the jury was "significantly influenced" by what it heard. Pritchett incorrectly relies on *State v. Bates,* 784 P.2d 1126 (Utah 1989), as authority to prohibit questioning as to changes in B.B.'s behavior following the alleged assault. In *Bates,* this court held that admission of expert testimony as to the veracity of a victim of sexual assault was reversible error. *See also State v. Rimmasch,* 775 P.2d 388 (Utah 1989) (holding that admission of expert scientific appraisal of victim's veracity when allegations of sexual abuse were made was prejudicial error). Clearly, neither *Bates* nor *Rimmasch* applies here, where no testimony, expert or otherwise, is presented as to B.B.'s veracity. Pritchett fails to present any authority prohibiting questioning about changes in B.B.'s behavior, and we decline to find it for him. *See Peterson v. Sunrider Corp.,* 2002 UT 43, n. 9, 48 P.3d 918 (declining to address inadequately briefed claim on appeal where claim was supported by "[a] single, vague sentence without citation to the record or legal authority"); *State v. Gamblin,* 2000 UT 44, ¶ 7, 1 P.3d 1108 (noting inadequacy of appellant's brief where brief failed to provide "meaningful legal analysis" and "merely contain[ed] one or two sentences stating his argument generally ... and then broadly conclude[d] that [appellant] is entitled to relief"). Accordingly, we conclude that the State's continued line of questioning did not constitute prosecutorial misconduct.

 ¶ 13 Moreover, Pritchett is fatally handicapped in asserting trial court abuse of discretion by failure of the defense to make a record of the bench conference, where the court established guidelines for the State's examination of G.B. Absent a record, this court is in no position to review the trial court's subsequent overruling of defense counsel's objections to the State's line of questioning, particularly when the grounds for overruling were that the questions were "within the parameters of what [was discussed] at the bench." Indeed, when an appellant fails to provide an adequate record on appeal, we presume the regularity of the proceedings below. As this court has previously stated, "When crucial matters are not included in the record, the missing portions are presumed to support the action of the trial court." *State v. Linden,* 761 P.2d 1386, 1388 (Utah 1988). Such is the case here, and as a result, we make a similar presumption.

¶ 14 Pritchett has failed to adequately argue to this court how the State's questioning of G.B. rose to the level of prosecutorial misconduct. Moreover, he has failed to preserve a record on appeal that would allow this court to evaluate the actions of the trial court, and we therefore presume the regularity of the proceedings. Accordingly, we find no abuse of discretion by the trial court and affirm denial of the motion for mistrial.

## II. HEARSAY TESTIMONY

¶ 15 Pritchett's second claim is that the trial court erred in denying his motion for a new trial based on the admission of improper hearsay testimony. In establishing a standard of review for this issue, we have stated that "we will not reverse a trial court's decision [to grant or deny a new trial] absent a clear abuse of ... discretion," *State v. Harmon,* 956 P.2d 262, 266 (Utah 1998), but "[a]ny legal determinations made by the trial court as a basis for its denial of a new trial motion are reviewed for correctness," *State v. Loose,* 2000 UT 11, ¶ 8, 994 P.2d 1237.

¶ 16 At the preliminary hearing prior to trial, B.B. testified that Pritchett (1) pulled down her underpants several times, (2) penetrated her "private area" with his index and middle fingers, and (3) "sticked his privates

inside her private" area. At trial, under initial direct examination, B.B. was unable to testify to anything other than Pritchett pulling her underpants down. After the prosecution gave B.B. a copy of the transcript of her preliminary hearing testimony to refresh her memory, she testified under direct examination that Pritchett used his middle and index fingers to play with her "private area." Then under cross-examination, without reference to the preliminary hearing transcript, she repeated her testimony that Pritchett "play[ed] with [her] private." Finally, on redirect, B.B. testified, again without relying on the preliminary hearing transcript, that Pritchett "touched [her] private part." B.B. was not able to testify, however, that Pritchett had either touched her or penetrated her with his penis.

¶ 17 Pritchett argues that allowing B.B. to review her preliminary hearing testimony at trial constituted improper admission of hearsay evidence. Pritchett claims that B.B. could not testify directly of any digital penetration without the preliminary hearing transcript testimony, which was given without any cross-examination of B.B. by the defense. Thus, Pritchett concludes that having B.B. review her preliminary testimony was equivalent to admitting the transcript as evidence, that such evidence was hearsay, and that its admission violated his right to confrontation of witnesses against him as guaranteed by the Utah Constitution. We disagree with Pritchett's characterization of the use of the preliminary hearing transcript and the conclusions he draws from that characterization.

■ ¶ 18 We note initially that to the extent Pritchett argues that B.B.'s testimony at trial was improperly refreshed by her review of the preliminary hearing transcript, the defense failed to preserve any objection to such refreshment in the record. As a result, Pritchett's argument, raised here for the first time on appeal, that B.B.'s testimony of Pritchett playing with her "private area" with his middle and index fingers was improperly refreshed is not properly before

this court. "Trial counsel must state clearly and specifically all grounds for objection. Inasmuch as [counsel failed] to assert a claim ... at the trial court, the issue is not properly preserved for appeal." *State v. Larsen*, 865 P.2d 1355, 1363 n. 12 (Utah 1993). In addition, Pritchett fails to state any exception to the preservation rule, and as a consequence, any argument of improper refreshment is waived. *State v. Pledger*, 896 P.2d 1226, 1229 n. 5 (Utah 1995).

■ ¶ 19 Nevertheless, B.B.'s testimony at trial was correctly refreshed in accordance with Utah Rule of Evidence 612, which states in relevant part as follows:

> If a witness uses a writing to refresh the witness' memory for the purpose of testifying, either
>
> > (1) while testifying, or
> >
> > (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
>
> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

Utah R. Evid. 612; *see also* Edward L. Kimball & Ronald E. Boyce, *Utah Evidence Law*, 6–58 (1996) [hereinafter *Utah Evidence Law* ] ("Generally an examining party may refresh a witness's recollection where the witness's memory is weak. Anything that will quicken the witness's memory may be used.").

¶ 20 The transcript of B.B.'s preliminary hearing testimony was "produced at the hearing," defense counsel had opportunity "to inspect it," and B.B. was cross-examined by the defense. The transcript was not introduced into evidence only because the *defense* objected to its admission on grounds that B.B.'s inability to remember portions of her preliminary hearing testimony did not render her "unavailable as a witness" at trial.[1] Thus, the transcript of B.B.'s prelimi-

---

**1.** *See* Utah Rule of Evidence 804(a)(3), (b)(1) (defining respectively "unavailability as a witness" for lack of memory and the hearsay excep-

tion for the "former testimony" of an unavailable witness). Defense was proceeding on a hearsay theory, and there was no objection on the use of

nary hearing testimony was correctly introduced according to Utah Rule of Evidence 612 to refresh B.B.'s memory for "the purpose of testifying."

¶ 21 Having thus refreshed her memory, B.B. was able to testify as to Pritchett's digital penetration of her vagina under direct, cross-, and redirect examination. *See supra* ¶ 16. Since B.B. testified at trial, independent of the preliminary hearing transcript, and was subject to cross-examination, the transcript itself was not hearsay evidence, as Pritchett contends. *See also Utah Evidence Law* 6–58 ("If a document is used [to refresh memory], it does not matter who prepared it or when it was prepared, because *the document is not evidence* any more than an electric shock would be evidence just because it triggered memory." (emphasis added)). As a result, his right to confrontation was not violated. We find no error in the trial court's legal determination allowing B.B. to refresh her memory with the transcript of her preliminary hearing testimony. Consequently, the transcript was not improper hearsay testimony, and the trial court did not abuse its discretion in denying Pritchett's motion for a new trial based on his characterization of it as such. Accordingly, we affirm the trial court's denial of Pritchett's motion for a new trial.

## III. INSUFFICIENCY OF EVIDENCE

¶ 22 Pritchett's third issue raised on appeal is that the trial court erred in not granting his motion for arrest of judgment, based on insufficient evidence to support the jury verdict convicting him of aggravated sexual abuse. This court has stated that in order to prevail on a sufficiency challenge to a jury verdict, "the one challenging the verdict must marshal the evidence in support of the verdict and then demonstrate that the

evidence is insufficient when viewed in the light most favorable to the verdict." *State v. Hopkins,* 1999 UT 98, ¶ 14, 989 P.2d 1065 (quotation omitted). We will not overturn a jury verdict unless the evidence presented at trial is "so insufficient that reasonable minds could not have reached the verdict." *State v. Colwell,* 2000 UT 8, ¶ 42, 994 P.2d 177.

¶ 23 Section 76–5–404.1 of the Utah Code provides that a person commits aggravated sexual abuse of a child if that person had "intent to cause substantial emotional or bodily pain" or "intent to arouse or gratify the sexual desire of any person," and caused "the penetration, however slight, of the genital or anal opening of the child by any part or parts of the human body other than the genitals or mouth." Utah Code Ann. § 76–5–404.1(1), (3)(j) (1999). Pritchett contends that the State's evidence at trial failed to establish the elements of the crime for which he was convicted by the jury.

¶ 24 Pritchett argues that his conviction for aggravated sexual abuse rests solely on a transcript of B.B.'s redacted preliminary hearing testimony regarding the alleged rape that was admitted as substantive evidence.[2] For reasons set forth in part II of the analysis above, we reject Pritchett's reasoning that the redacted preliminary hearing transcript is the only evidence that supports his conviction, as did the jury. To the contrary, B.B.'s refreshed trial testimony independently and sufficiently established the elements of the crime to the satisfaction of the jury, which found Pritchett guilty of aggravated sexual abuse.

¶ 25 Pritchett's burden on appeal against the jury verdict is to "first marshal all record evidence that supports the challenged finding." Utah R.App. P. 24(a)(9). Such a burden is indeed significant, and re-

---

a writing to refresh a witness's memory under Utah Rule of Evidence 612.

**2.** A transcript of B.B.'s redacted preliminary hearing testimony about Pritchett touching and penetrating her vagina with his penis—elements of rape of a child—was admitted by the trial court under Utah Rule of Evidence 801(d)(1)(A) ("A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and

the statement is inconsistent with the declarant's testimony or the witness denies having made the statement or has forgotten. . . ."). B.B. was not able to testify at trial as to any penile touching or penetration of her vagina, and the transcript was offered as substantive evidence of the crime of rape of a child. The transcript evidence was obviously rejected by the jury when it acquitted Pritchett of this charge.

quires Pritchett to "marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." *Hopkins,* 1999 UT 98 at ¶ 14, 989 P.2d 1065. In his brief on appeal to this court, however, Pritchett fails entirely to address the evidence supporting aggravated sexual abuse— the crime for which he was convicted. He focuses instead on the preliminary hearing transcript evidence supporting rape—the crime of which he was acquitted.

¶ 26 As a result, Pritchett fails both to meet his marshaling burden required by our court rules and to demonstrate how the evidence against him was "so insufficient that reasonable minds could not have reached the verdict." *Colwell,* 2000 UT 8 at ¶ 42, 994 P.2d 177. Accordingly, we affirm the trial court's denial of Pritchett's motion for arrest of judgment.

## IV. CONSTITUTIONALITY OF SECTION 76–5–406.5(1)(h) OF THE UTAH CODE

¶ 27 The fourth and final challenge Pritchett makes on appeal is to the constitutionality of section 76–5–406.5(1)(h) of the Utah Code (1999), which requires him to admit the offense for which he has been convicted in order to be considered for probation. Specifically, Pritchett claims that this requirement violates his right of due process, protection against self-incrimination, and guarantee of equal protection under the Fifth and Fourteenth Amendments to the United States Constitution.[3]

¶ 28 Section 76–5–406.5(1) provides that a convicted child sex offender can qualify for probation to a residential sexual abuse treatment center if the offender meets twelve statutory requirements that indicate such treatment will have a high probability of success. Among these requirements is that "the defendant admit[ ] the offense of which he has been convicted." Utah Code Ann. § 76–5–406.5(1)(h). In so challenging this statutory requirement, Pritchett's burden is heavy. " 'A constitutional challenge to a statute presents a question of law, which we review for correctness. . . . When addressing such a challenge, this court presumes that the statute is valid, and we resolve any reasonable doubts in favor of constitutionality.' " *State v. Morrison,* 2001 UT 73, ¶ 5, 31 P.3d 547 (quoting *State v. Lopes,* 1999 UT 24, ¶ 6, 980 P.2d 191).

¶ 29 We note at the outset that in regard to Pritchett's equal protection claim, this court has already stated that child sex abusers do not " 'generally constitute a suspect class entitled to either a heightened or an intermediate level of scrutiny.' " *State v. Copeland,* 765 P.2d 1266, 1269 (Utah 1988) (quoting *State v. Bishop,* 717 P.2d 261, 266 (Utah 1986)). As a result, the child sex offender classification under examination here will stand if it " 'bears a reasonable and substantial relation to a legitimate state objective.' " *Id.* (quoting *State v. Amicone,* 689 P.2d 1341, 1343 (Utah 1984)).

¶ 30 Sexual assault of a child is an especially damaging crime, and it is because of the "long-term and perhaps lifetime" effects upon the victim that "[t]he State clearly has a strong interest in protecting children from sexual abuse and exploitation." *Bishop,* 717 P.2d at 267. In fact, in *State v. Johnson,* 856 P.2d 1064, 1073 (Utah 1993), we previously observed that "[a] primary purpose of the

---

3. Pritchett argues with specificity for the first time in his brief to this court that section 76–5–406.5(1)(h) also violates his state constitutional rights. Before the trial court, the defense argued only in general terms that state constitutional guarantees were interpreted similarly or offered the same protection as their federal analogues, and the trial court in its ruling did not address specific state constitutional issues. Thus, Pritchett's state constitutional claims were not preserved and are not properly before us. We have previously stated that "[a]s a general rule, we will not engage in state constitutional analysis unless an argument for different analyses under the state and federal constitutions is briefed," *State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988), and as the court of appeals has correctly observed on several occasions, "the proper forum in which to commence thoughtful and probing analysis of state constitutional interpretation is before the trial court, not . . . for the first time on appeal," *State v. Bobo,* 803 P.2d 1268, 1273 (Utah Ct.App.1990). *See also State v. McGrath,* 928 P.2d 1033, 1039 n. 2 (Utah Ct.App.1996); *State ex rel. N.R., L.R. & C.R. v. State,* 967 P.2d 951, 954 n. 3 (Utah Ct.App.1998). Accordingly, we do not reach any of Pritchett's state constitutional claims here.

probation statute [section 76–5–406.5] is to avoid compounding the harm already suffered while protecting the victim from further abuse." In regard to child sex crimes, the State has a clearly legitimate interest: protecting children as current or potential victims, and—to the extent that it is possible—rehabilitating convicted child sex offenders. The probation statute is very narrowly tailored toward convicted sex offenders who seek to avoid a mandatory prison sentence by qualifying for probation to a residential treatment center by meeting all the requirements. Thus, the statute is directly and substantially related to the State interest. Accordingly, we find no violation of Pritchett's Fourteenth Amendment guarantee of equal protection in his treatment as a convicted child sex offender under section 76–5–406.5(1)(h) of the Utah Code.

¶ 31 As to Pritchett's claim that the probation statute violates his Fifth Amendment rights, the United States Supreme Court recently reaffirmed in an analogous case, *McKune v. Lile*, 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), that the Constitution does not forbid requiring convicted criminal defendants to make hard choices between constitutional rights, and that in the criminal process "[i]t is well settled that the government need not make exercise of the Fifth Amendment privilege cost free." *Lile*, 122 S.Ct. at 2029; *see McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) ("Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose."); *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (holding that a criminal defendant's exercise of his Fifth Amendment privilege prior to arrest may be used to impeach his credibility at trial); *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (holding that a criminal defendant may be compelled to disclose the substance of an alibi defense prior to trial or be barred from asserting it).

¶ 32 At issue in *Lile* was a Kansas state prison program that required convicted sex offenders to participate in a sexual abuse treatment program ("SATP") as they neared the end of their sentences or else their prison privileges would be reduced. The SATP required participants to accept responsibility for all prior sex crimes, whether or not they had been charged, and the information thus disclosed was not privileged. Convicted sex offender Robert Lile refused to participate in the SATP, claiming, as does Pritchett, that admitting to his criminal sexual history in exchange for a privilege violated his Fifth Amendment protections. *Lile*, 122 S.Ct. at 2023.

¶ 33 The Supreme Court held that the consequence of Lile's choice not to participate in the SATP—loss of some prison privileges—did not amount to compulsion in violation of the Fifth Amendment, stating that "[a] broad range of choices that might infringe constitutional rights in free society fall within the expected conditions of confinement of those who have suffered a lawful conviction." *Id.* at 2026. Thus, requiring Lile to make a choice was not a punishment amounting to compulsion, but was rather part of a "legitimate penological interest" in the rehabilitation of offenders. *Id.* The Supreme Court also reasoned, relying on the framework previously set down in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that the consequences Lile faced if he did not participate in the SATP did not approach "the physical torture against which the Constitution clearly protects," but were closer to the "*de minimus* harms against which it does not." *Lile*, 122 S.Ct. at 2029. The Court concluded by noting that accepting Lile's argument "would call into question the constitutionality of an accepted feature of federal criminal law: the downward adjustment [of a sentence] for acceptance of criminal responsibility." *Id.* at 2032; *see, e.g., United States v. Rogers*, 921 F.2d 975 (10th Cir.), *cert. denied*, 498 U.S. 839, 111 S.Ct. 113, 112 L.Ed.2d 83 (1990) (holding that "the denial of a downward adjustment under [federal sentencing guidelines] does not constitute a penalty or an enhancement of sentence" under the Fifth Amendment).

¶ 34 In his reply brief on appeal to this court, Pritchett fails to address the analysis

the United States Supreme Court made in *Lile,* making only a single sentence reference to the decision, characterizing it as dealing with "post-sentencing prison regulations" and thus being inapplicable here. Such a characterization is inaccurate. The Supreme Court clearly based part of its rationale in *Lile* on the interest the government has in rehabilitating convicted sexual offenders and protecting the public from them when they are outside of prison.

¶ 35 "Sex offenders are a serious threat in this Nation," the Court observed, and when they "reenter society, they are much more likely than any other type of offender to be arrested for a new rape or sexual assault." *Lile,* 122 S.Ct. at 2024. This same rationale governs Utah's sex offender probation statute. *See supra* ¶ 30. The Court also observed that "[a]n important component of ... rehabilitation programs [for sex offenders] requires participants to confront their past and accept responsibility for their misconduct." *Id.* Thus, *Lile* addresses a program that has the same objectives and concerns as the Utah child sex offender probation statute, and it is accordingly analogous and properly applied in this case.

¶ 36 The *Lile* rationale is, in fact, particularly applicable here, where the Utah statute *grants* a privilege of probation, while the policy examined in Lile *reduces* privileges while incarcerated. Indeed, as this court has previously stated, a "defendant has no right to be placed on probation, that being within the discretion of the trial judge." *State v. Smith,* 842 P.2d 908, 910 (Utah 1992). Utah's probation statute grants a privilege to which the convicted child sex offender has no automatic right—placement in a resident treatment facility—in exchange for the offender choosing to admit culpability. Otherwise, the offender can choose to serve out the mandatory term to which he has been lawfully convicted. Thus, the statute clearly falls under the "broad range of choices" that do not violate the Fifth Amendment under *Lile,* which are "the expected conditions of ... those who have suffered a lawful conviction." Accordingly, we hold that the convicted child sex offender probation statute, section 76–5–406.5(1)(h) of the Utah Code, does not violate Pritchett's right of due process and protection against self-incrimination under the Fifth Amendment to the United States Constitution.

## CONCLUSION

¶ 37 For reasons set forth in this opinion, we affirm the decisions of the trial court and Pritchett's conviction for aggravated sexual abuse of a child. Furthermore, we do not find section 76–5–406.5(1)(h) of the Utah Code to be in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

¶ 38 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Judge BENCH concur in Justice RUSSON's opinion.

¶ 39 Justice HOWE did not participate herein; Court of Appeals Judge RUSSELL W. BENCH sat.