2005 UT App 450

**In the MATTER OF GENERAL DETERMINATION OF RIGHTS TO USE OF WATER, both surface and underground, within all of Tooele County; all of Juab County, except that portion draining to Utah Lake and to the Sevier River drainage; and all of Millard, Beaver and Iron Counties, except that portion in the Sevier River and the Virgin River drainage in Utah.**

**State Engineer, Appellant,**

v.

**Raymond L. Shepherd and Katherine F. Shepherd, Appellees.**

No. 20040764–CA.

Court of Appeals of Utah.

Oct. 20, 2005.

Mark L. Shurtleff, atty. gen., Norman K. Johnson, and Julie I. Valdes, asst. atty. gen., Salt Lake City, for Appellant.

Raymond L. Shepherd and Katherine F. Shepherd, Stansbury Park, Appellees Pro Se.

Before Judges DAVIS, ORME, and THORNE, Jr.

## OPINION

DAVIS, Judge:

¶ 1 Jerry D. Olds, Utah State Engineer (the State Engineer), appeals the district court's interlocutory order denying his motion to dismiss Raymond L. and Katherine F. Shepherd's (collectively, the Shepherds) claim to water rights. We reverse and remand.

## BACKGROUND

¶ 2 The State Engineer's office commenced a general adjudication of water rights under Utah Code section 73–4–1 for Tooele County and portions of Juab, Millard, Beaver, and Iron Counties on June 2, 1965 in the Third District Court of Tooele County. The State Engineer's office spent the next twenty-four years following the statutory procedure for surveying the area and compiling records of water claims. By December 22, 1989, it had completed a proposed determination of water rights for the Erda/Lakepoint Subdivision and sent notice of the determination to all known claimants asserting rights in the subdivision. Pursuant to Utah Code section 73–4–22, the State Engineer's office also published a final summons to notify any unknown claimants of their last opportunity to assert a claim. *See* Utah Code Ann. § 73–4–22 (1989). The summons was published in five weekly issues of the Tooele Transcript–Bulletin from December 30, 1999, to January 27, 2000, and included the following disclaimer, patterned after that required under Utah Code section 73–4–4, *see id.* § 73–4–4 (1989):

> You are hereby summoned to appear in the above-entitled action and assert and

defend any claim to water.... IF YOU HAVE NOT PREVIOUSLY BEEN SERVED WITH SUMMONS, AND YOU CLAIM A WATER RIGHT THAT IS NOT INCLUDED IN THE PROPOSED DETERMINATION IN THE ERDA/LAKEPOINT DIVISION ..., YOU ARE HEREBY REQUIRED TO NOTIFY THE STATE ENGINEER IN WRITING OF YOUR CLAIM, NAME AND ADDRESS, BEFORE FEBRUARY 29, 2000.... After you notify the State Engineer, you will be sent, at the address you indicate, a Water User's Claim form and written instructions. Pursuant to Utah Code Ann. § 73-4-9, persons failing to file a claim ... shall be forever barred and estopped from asserting those claims.

¶ 3 Up to this point, the Shepherds, who claim rights to a well in the Erda/Lakepoint Subdivision, had not participated in the Erda/Lakepoint proceedings. However, they responded to the published summons by filing a document entitled "Answer to Summons and Claim to Water Rights" (Answer and Claim) on January 30, 2001,[1] describing the location of their property and, in a brief, general statement, the history of their claimed right to the well.

¶ 4 On February 9, 2001, representatives of the State Engineer met with the Shepherds on their property and requested that they provide detailed information regarding their claimed water use on certain forms,[2] which the representatives left with them. The representatives explained that the forms must be completed in order to properly assert a claim. On April 30, 2001, the State Attorney General's office sent a letter to the Shepherds notifying them that they would have thirty days from the date of the letter to complete and return the forms; otherwise, their claim would be disregarded.

¶ 5 The Shepherds never submitted the completed forms. On April 5, 2004, the State Engineer moved to dismiss their Answer and Claim because it did not contain all of the information required for a claimant's statement under Utah Code section 73-4-5. *See id.* § 73-4-5 (1989) (listing the mandatory contents of a claimant's statement). The Shepherds contested the motion pro se and filed a memorandum in which they described the history of their interest and generally asserted that "[w]ater has been continually in use on the property, to water livestock and poultry, to water pasture land, and to water an orchard, berries, and garden. We can clearly prove our need for the water." The district court determined, without stating its reasons, that the Shepherds' Answer and Claim constituted a claimant's statement under section 73-4-5 and denied the State Engineer's motion to dismiss.[3] The State Engineer petitioned for an interlocutory appeal, which we granted.

## ISSUE AND STANDARD OF REVIEW

¶ 6 The only issue presented on appeal is whether the Shepherds' Answer and Claim satisfies the requirements of Utah Code section 73-4-5. The trial court's interpretation and application of a statute presents a question of law, which we review for correctness. *See Gutierrez v. Medley,* 972 P.2d 913, 914-15 (Utah 1998).

## ANALYSIS

¶ 7 It has been frequently noted that " '[w]ater, in an arid state like Utah, is its life-blood' " and that " 'a drop of water [is] a drop of gold.' " *Longley v. Leucadia Fin. Corp.,* 2000 UT 69,¶ 15, 9 P.3d 762 (citations omitted). For this reason, the procedures prescribed by statute are intended to assure the fair, expeditious, and accurate determina-

---

1. The Shepherds' claim was actually filed by mistake on October 7, 1998, in response to the State Engineer's earlier published summons for the related Grantsville Subdivision action. The State Engineer recognized the error and on January 30, 2001, obtained a court order permitting him to re-file Shepherds' response in the Erda/Lakepoint action. The State Engineer notified the Shepherds of this change on the same day.

2. The forms were a means for collecting the information required by Utah Code section 73-4-5. *See* Utah Code Ann. § 73-4-5 (1989).

3. The State Engineer and the district court addressed the motion in the context of rule 41(a) of the Utah Rules of Civil Procedure, which permits a plaintiff to voluntarily dismiss his own action. *See* Utah R. Civ. P. 41(a). We decline to address the applicability of rule 41 because neither party has raised the issue on appeal.

tion of water rights and, ultimately, to provide "the most efficient use of this scarce commodity." *Id.* at ¶ 19. Specifically, when certain water rights to a particular water source are asserted by several claimants, the statute requires an orderly procedure through which the State Engineer determines water rights based on his own survey of the water source and detailed information collected from each of the claimants. *See* Utah Code Ann. § 73–4–3 (1989).

¶ 8 The State Engineer's primary vehicle for gathering information from claimants is the "claimant's statement." Utah Code sections 73–4–4 and –5 provide that all claimants, including those summoned by means of published notice, must submit a statement of their claim. *See id.* §§ 73–4–4 to –5 (1989). The statement must "be signed and verified by the oath of the claimant" and contain "as near as may be" the following information:

[ (1) ] [t]he name and post-office address of the person making the claim;

[ (2) ] the nature of the use on which the claim of appropriation is based;

[ (3) ] the flow of water used in cubic feet per second or the quantity of water stored in acre-feet, and the time during which it has been used each year;

[ (4) ] the name of the stream or other source from which the water is diverted, the point on such stream or source where the water is diverted, and the nature of the diverting works;

[ (5) ] the date when the first work for diverting the water was begun, and the nature of such work;

[ (6) ] the date when the water was first used, the flow in cubic feet per second or the quantity of water stored in acre-feet, and the time during which the water was used the first year; and

[ (7) ] the place and manner of present use; and

[ (8) ] such other facts as will clearly define the extent and nature of the appropriation claimed.

*Id.* § 73–4–5. This section also requires claimants to provide information "as may be required by the blank form which shall be furnished by the state engineer under the direction of the court." *Id.* The claimant's statement serves not only to provide infor-

mation to the state engineer, but also to give "notice to all persons of the claim." *Id.* § 73–4–9 (1989). The claimant's statement is so significant in such proceedings that "any person failing to make and deliver such a statement of claim … within the time prescribed by law shall be forever barred and estopped from subsequently asserting any rights," except under particular circumstances where the claimant has no actual notice of the proceedings. *Id.*

¶ 9 Generally, when statutory requirements are unambiguous, parties are required to strictly comply with their terms. *See Greene v. Utah Transit Auth.,* 2001 UT 109, ¶ 14, 37 P.3d 1156 ("Where, as here, the statute is clear, readily available, and easily accessible by counsel, there is no reason to require anything less than strict compliance."). This principle is no less valid when applied to water rights law. *See Longley,* 2000 UT 69 at ¶¶ 21–22, 9 P.3d 762 (reviewing the strict compliance requirements of the governmental immunity statute and stating that "[w]e perceive no reason to treat the statutory notice requirement any less strictly in the water rights context"). Here, the statutory requirements are unambiguous, and it is undisputed that the Shepherds' Answer and Claim does not contain each of the required items of information. Notably, the Shepherds have not submitted the forms provided by the State Engineer's office and have not otherwise indicated the quantity of water used or stored on their land and the times of year used. Although the Shepherds assert in subsequent filings that they use the water for their livestock, pasture, and orchard, these filings do not "clearly define" the place, manner, or extent of such use. Utah Code Ann. § 73–4–5.

## CONCLUSION

¶ 10 For these reasons, we conclude that the district court erred in determining that the Shepherds' Answer and Claim has met the requirements of Utah Code section 73–4–5. Accordingly, we reverse the district court's order and remand for further proceedings under Utah Code sections 73–4–1 to –24.

¶ 11 I CONCUR: WILLIAM A. THORNE JR., Judge.

ORME, Judge (concurring specially).

¶ 12 I concur in the lead opinion, but write separately to give consideration to a doctrine that was raised at oral argument and dealt with in a letter of supplemental authority but is not addressed in the lead opinion. My concern stems from the failure of the State Engineer to have included a transcript of the hearing on the motion to dismiss as part of the record on appeal.

¶ 13 In Utah, district courts are "courts of record." Utah Const. art. VIII, § 1. As such, they must consistently make records of all proceedings, even those that may not seem critical at the time. *See Briggs v. Holcomb*, 740 P.2d 281, 282–83 (Utah Ct.App. 1987). While such a requirement may impose a bit of an administrative burden on the trial court, it is the only way an appellate court "can review what may ultimately prove to be important proceedings" once an appeal is taken. *Id.* at 283. *See also Olson v. Park–Craig–Olson, Inc.*, 815 P.2d 1356, 1359 (Utah Ct.App.1991) (stating that the appellate court may "weigh only those facts and legal arguments preserved for [it] in the trial court record" and noting that "[c]ounsel's recollection of the course of the proceedings is no substitute for a record of those proceedings").

¶ 14 Requiring district courts to make a complete record of all proceedings enables appellants to meet their burden of making sure the record on appeal is adequate to permit review of their claims. *See Gorostieta v. Parkinson*, 2000 UT 99, ¶ 34, 17 P.3d 1110. The hearing on a motion to dismiss an action is an important proceeding, and knowing what happened at such a hearing is crucial to an appeal from the denial of that motion. Therefore, one who appeals an order granting or denying a motion to dismiss should routinely include a transcript of any such hearing in the record on appeal.

¶ 15 "[W]hen an appellant fails to provide an adequate record on appeal, we presume the regularity of the proceedings below." *State v. Pritchett*, 2003 UT 24, ¶ 13, 69 P.3d 1278. "When crucial matters are not included in the record, the missing portions are presumed to support the action of the trial court." *State v. Linden*, 761 P.2d 1386, 1388 (Utah 1988). *See also Parrish v. Layton City Corp.*, 542 P.2d 1086, 1089 (Utah 1975) (Ellett, J., dissenting) ("One who attacks the judgment of the Trial Court has the burden of showing error, and when the transcript of a proceeding in court is not brought before us, we cannot speculate that perhaps there was no proper evidence to sustain the ruling made.").

¶ 16 Contrary to the position taken by the State Engineer's office in its letter of supplemental authority, this doctrine of assuming the regularity of proceedings as a means to affirm when our record is incomplete is applicable in many contexts. It surely includes the familiar situation where an appellant challenges the adequacy of the evidence supporting the trial court's findings of fact. The two cases cited by the State Engineer are illustrative. *See Bevan v. J.H. Constr. Co., Inc.*, 669 P.2d 442, 443 (Utah 1983) ("In the absence of a transcript, we assume that the proceedings at trial were regular and proper and that the judgment was supported by competent and sufficient evidence."); *Sampson v. Richins*, 770 P.2d 998, 1006 (Utah Ct.App.1989) ("Whether causation has been established is a question of fact, and in the absence of a complete record, we assume the trial court's finding of causation is supported by the evidence.") (citation omitted), *cert. denied*, 776 P.2d 916 (Utah 1989). The doctrine, however, is by no means limited, as the State Engineer contends, to such evidentiary challenges. *See, e.g., Pritchett*, 2003 UT 24 at ¶ 13, 69 P.3d 1278 (challenge to denial of motion for mistrial); *Parrish*, 542 P.2d at 1089 (Ellett, J., dissenting) (challenge to summary judgment); *State v. Penman*, 964 P.2d 1157, 1162 (Utah Ct.App.1998) (claim of ineffective assistance of counsel); *Poulsen v. Frear*, 946 P.2d 738, 743 n. 2 (Utah Ct.App. 1997) (allegation of trial judge bias); *State v. Blubaugh*, 904 P.2d 688, 699 (Utah Ct.App. 1995) (challenge to denial of motion to suppress), *cert. denied*, 913 P.2d 749 (Utah 1996); *Ames v. Maas*, 846 P.2d 468, 474 (Utah Ct.App.1993) (claim of prejudice in jury instructions).

¶ 17 Given this doctrine and the failure of the State Engineer to include a transcript of the hearing, it is with some reluctance that I concur in the reversal of the trial court's order. It seems as though we should perhaps employ the doctrine in this case and

affirm. It is at least possible that appellees made a representation, or that the State Engineer made a concession, or that the trial court offered some incisive analysis from the bench that would make affirmance appropriate. Such a possibility usually triggers the presumption that the missing record would, in fact, validate the order before us. In reality, though, it seems highly unlikely that any such thing would have happened in this case and not been memorialized in the order signed by the trial court. Moreover, and most importantly, appellees have not participated in the appeal. As a result, we do not even have before us a contention that something in the missing record would provide a basis on which we could affirm.

¶ 18 All things considered, then, this case does not seem to require application of the doctrine that we assume the regularity of proceedings below when the record before us is incomplete. The better practice, however, would surely have been for the State Engineer to order the transcript of the hearing and include it in the record on appeal.