2016 UT App 69

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JESSE A. SAENZ,
Appellant.

Memorandum Decision
No. 20141147-CA
Filed April 7, 2016

Eighth District Court, Vernal Department
The Honorable Clark A. McClellan
No. 131800328

Colleen K. Coebergh, Attorney for Appellant

Sean D. Reyes and Marian Decker, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE RUSSELL W. BENCH concurred.[1]

ROTH, Judge:

¶1     Jesse A. Saenz appeals his convictions for murder, a first degree felony; theft, a second degree felony; and possession of a firearm by a restricted person, a second degree felony. Because Saenz has not demonstrated that the trial court's alleged error prejudiced him, we affirm.

¶2     Saenz's convictions resulted from events that transpired on April 21, 2013. In a series of text messages that morning with

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

the victim, E.O., Saenz asked if E.O. would take him from his apartment in Roosevelt to his grandfather's home in Fort Duchesne for $20. E.O. agreed. He arrived at Saenz's apartment complex around noon, driving a black Mazda that he co-owned with his mother. E.O.'s body was discovered by Saenz's mother and sister a few hours later on Saenz's grandfather's property. E.O. had been shot multiple times. Expended bullet casings were discovered beneath E.O.'s body and in the nearby parking area. Saenz's grandfather's revolver and coin collection were missing from the house. E.O.'s missing cell phone was later discovered discarded on the road between Saenz's apartment and his grandfather's property.

¶3     Saenz had been wearing an ankle monitor on the day of the events. GPS data from the unit indicated that at the approximate time E.O. picked him up, Saenz was "in movement." Around 12:30 p.m., GPS data located Saenz at his grandfather's property in Fort Duchesne and indicated that Saenz then returned to his apartment in Roosevelt along the route where E.O.'s cell phone was later found. After receiving a tampering alarm around 1:00 p.m., law enforcement officers discovered Saenz's ankle monitor, the strap cut through, on the floor of his apartment; Saenz was nowhere to be found.

¶4     Late the next day, officers of the United States Marshals Service apprehended Saenz in a parking lot in Phoenix, Arizona. He was in E.O.'s black Mazda, and his grandfather's coins and the revolver were in the car. A text message sequence on Saenz's cell phone mirrored the exchange on E.O.'s cell phone from the previous morning. Further, during trial, a ballistics expert testified that, in his opinion, the bullet casings found at the crime scene were "fired from [the] revolver" stolen from Saenz's grandfather's house and later found in E.O.'s vehicle.

¶5     Also at trial, the court instructed the jury before opening statements that "[t]he prosecution must prove each element beyond a reasonable doubt. Until then, you must presume that the defendant is not guilty. The defendant does not have to

prove anything. He does not have to testify, call witnesses, or present evidence." After the State rested and defense counsel stated that he would call no witnesses, the court questioned Saenz in the presence of the jury about whether he desired to testify:

> THE COURT: Mr. Saenz, I need to ask you a question just to make sure. You understand that you have the absolute right to testify or not testify?
>
> MR. SAENZ: Yes, your Honor.
>
> THE COURT: If you choose not to testify, the jury cannot consider that in their deliberations.
>
> MR. SAENZ: Yes, your Honor.
>
> THE COURT: You also are the one that controls that right. Your attorneys can't compel you or coerce you or force you or threaten you or do anything to cause you not to testify. Do you understand that?
>
> MR. SAENZ: Yes, your Honor.
>
> THE COURT: Is this your voluntary decision not to testify?
>
> MR. SAENZ: Yes, your Honor.
>
> THE COURT: All right, thank you.

¶6 Before closing argument, the trial court explicitly instructed the jurors regarding Saenz's decision not to testify:

> A person accused of a crime may choose whether or not to testify. In this case the defendant chose not to testify. Do not hold that choice against the defendant. Do not try to guess why the defendant chose not to testify. Do not consider it in your deliberations. Decide the case only on the basis of

the evidence. The defendant does not have to prove that he or she is not guilty. The prosecution must prove the defendant's guilt beyond a reasonable doubt.

¶7 The jury returned verdicts of guilty on all counts. The court later sentenced Saenz to the statutory prison terms of fifteen years-to-life for the first degree felony, and one-to-fifteen years for both of the second degree felonies. It ordered that all sentences run consecutively. Saenz timely appealed.

¶8 On appeal, Saenz argues that the trial court erred by questioning him in the presence of the jury regarding whether he wanted to testify. Saenz concedes that this issue was not preserved below and has been raised for the first time on appeal. "[I]n general, appellate courts will not consider an issue, including constitutional arguments, raised for the first time on appeal unless the trial court committed plain error or the case involves exceptional circumstances." *State v. Dean*, 2004 UT 63, ¶ 13, 95 P.3d 276. Saenz argues this issue under the plain error exception to the preservation requirement. "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *Id.* ¶ 15 (citation and internal quotation marks omitted). Importantly, "[i]f any one of these requirements is not met, plain error is not established." *Id.* (citation and internal quotation marks omitted).

¶9 The Fifth Amendment to the United States Constitution provides, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.[2] In the

---

2. The Fifth Amendment privilege against self-incrimination is applicable to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 3, 6 (1964); *see also* Jeffrey Bellin,

(continued…)

context of statements made regarding a defendant's exercise of his right to silence during trial, the United States Supreme Court has held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). Along those lines, our own supreme court has indicated that even "[i]ndirect references to a defendant's failure to testify are constitutionally impermissible if the comments were manifestly intended to be or were of such a character that the jury would naturally and necessarily construe them to be a comment on the defendant's failure to testify." *State v. Tillman*, 750 P.2d 546, 554 (Utah 1987); *see also State v. Nelson-Waggoner*, 2004 UT 29, ¶ 31, 94 P.3d 186 ("[A] prosecutor commits constitutional error when his statement is manifestly intended or [is] of such character that a jury would naturally and necessarily construe it to amount to a comment on the failure of the accused to testify." (second alteration in original) (citation and internal quotation marks omitted)).

¶10   However, "the mere mention" of a defendant's decision not to testify "does not prima facie establish a due process violation." *State v. Harmon*, 956 P.2d 262, 268 (Utah 1998). Rather, "'the defendant's silence [must be used] to undermine the exercise of those rights guaranteed by the Fourteenth Amendment.'" *State v. Baker*, 963 P.2d 801, 806 (Utah Ct. App. 1998) (quoting *Harmon*, 956 P.2d at 267–68). Indeed, the United States Supreme Court noted in *Griffin* that the evil to be avoided in this context is the implication that "such silence is evidence of guilt." 380 U.S. at 615; *see also Harmon*, 956 P.2d at 268 ("[T]he State must, in some way, use the defendant's silence to undermine the exercise of those rights guaranteed by the

(…continued)
*Reconceptualizing the Fifth Amendment Prohibition of Adverse Comment on Criminal Defendants' Trial Silence*, 71 Ohio St. L.J. 229, 245 (2010) (briefly discussing *Malloy*'s holding).

Fourteenth Amendment before it can be said that such rights have been violated.").

¶11    Saenz argues that the tone and content of the court's colloquy with him about whether he would testify so focused the jury's attention on his decision *not* to testify that, in effect, the colloquy amounted to "an impermissible comment on [his] invocation of his right to remain silent." He states that the trial court's "presentation of [the] invocation [of the right against self-incrimination] was direct and explicit" and argues that the trial court should have known that "placing such undue emphasis on [his] decision not to testify" was error. In particular, he contends that "[t]he prohibition against commentary on the right to silence is grounded in the improper suggestion it leaves with the jury, the courting of nagging speculation about what would have been said." In this regard, he asserts that his case was "particularly susceptible to Jury prejudice against him for not testifying" because, despite "overwhelming evidence" of his guilt, there was no "information regarding motive" and, thus, the "total absence of any indication of motive would have left the Jury wishing for some rationale, justification, excuse, or explanation from [him]." Saenz asserts that in such circumstances, the "Court's showcasing" of his decision not to testify was "unfair commentary" of constitutional significance that amounted to plain error.

¶12    While we have concerns about the trial court's decision to question Saenz about his invocation of his right to silence in front of the jury, we do not reach the issue of whether the colloquy was obvious error, because Saenz has failed to demonstrate prejudice, the third prong of our plain error review.[3] *See State v. Dunn*, 850 P.2d 1201, 1224 (Utah 1993)

---

3. Although we do not reach the question of whether the trial court's colloquy regarding Saenz's invocation of his right not to testify was error in this case, it seems problematic to engage in this kind of inquiry in the presence of the jury. We held in *State*

(continued…)

("If there is no prejudice, we have no reason to reach the other elements of the [plain error] analysis.").

¶13    Saenz asserts that "[b]ecause of the fundamental right of the accused not to have such improper comment made regarding his decision not to testify, the err[or] is of constitutional magnitude, and the same can never be viewed as

_____

(…continued)
*v. Brooks*, 833 P.2d 362 (Utah Ct. App. 1992), that a "trial court bears no affirmative duty sua sponte to engage in an on-the-record colloquy with defendant at the time of trial to ensure a valid waiver of the right to testify." *Id.* at 365; *accord Cramer v. State*, 2006 UT App 492, ¶ 11, 153 P.3d 782 (same). In *Brooks*, we also noted some reasons why an on-the-record colloquy is problematic, including that it presents the dangers of "introduc[ing] error into the trial," "interfer[ing] with defense strategy," and "influenc[ing] the defendant to waive his right *not to* testify." *Brooks*, 833 P.2d at 365 (citation and internal quotation marks omitted); *accord, e.g., State v. Breeden*, 304 P.3d 660, 673 (Kan. 2013) ("There is a danger that by asking a defendant if he or she is aware of his right to testify, a trial court may inadvertently influence a defendant to waive the equally fundamental right against self-incrimination." (citation and internal quotation marks omitted)); *State v. Edwards*, 173 S.W.3d 384, 386 (Mo. Ct. App. 2005) (noting that while a trial court has "no duty to inquire" whether a defendant will testify, if the circumstances suggest that a colloquy should occur, "the more prudent course of action is for the trial court to *voir dire* the defendant, on the record, and outside the presence of the jury"); *State v. Jackson*, 23 N.E.3d 1023, 1052–55 (Ohio 2014) (observing that "a *sua sponte* inquiry from the trial judge regarding the defendant's choice to testify might impede on an appropriate defense strategy, might lead the defendant to believe that defense counsel has been insufficient, or might inappropriately influence the defendant to waive the Fifth Amendment right *not* to testify" (citation and internal quotation marks omitted)).

harmless." Saenz asks us, in essence, to presume prejudice merely because his claimed error is rooted in a constitutional right. However, as the State points out, our supreme court has recently held in *State v. Bond*, 2015 UT 88, 361 P.3d 104, that "unpreserved federal constitutional claims are not subject to a heightened review standard but are to be reviewed under our plain error doctrine." *Id.* ¶ 44. In *Bond*, the defendant argued that it was plain error for the trial court to have permitted the prosecution to treat his co-defendant as hostile and ask "leading questions" because it violated his constitutional right under the Confrontation Clause. *Id.* ¶¶ 30–35. Instead of demonstrating prejudice, however, the defendant argued that "where there is a constitutional violation, the burden to prove harm under plain error shifts to the State to demonstrate that the error was harmless beyond a reasonable doubt." *Id.* ¶ 35. The court rejected that argument, and held that "the defendant retains the burden to show harm for unpreserved federal constitutional claims" under the plain error exception to the preservation requirement. *Id.* The court reasoned that its holding "comports with the aims of preservation" by "'encourag[ing] timely objections and reduc[ing] wasteful reversals by demanding strenuous exertion to get relief for unpreserved error.'" *Id.* ¶ 45 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004)). It also noted that "requiring a defendant to demonstrate prejudice on an unpreserved claim harmonizes the prejudice inquiries under the plain error and ineffective assistance of counsel doctrines," both of which "serve as exceptions to our preservation rules." *Id.* ¶ 46.

¶14     *Bond* is dispositive in this case. Saenz does not attempt to demonstrate that "absent the error, there is a reasonable likelihood of a more favorable outcome"—in other words, that the error was harmful. *See State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276 (citation and internal quotation marks omitted). Rather, the entirety of his prejudice demonstration is one sentence where he asserts, as did the defendant in *Bond*, that because the error is of "constitutional magnitude," it "can never be viewed as harmless." Under *Bond*, this is insufficient. In the context of a

plain error claim, prejudice must still be shown, even if the alleged error implicates constitutional rights. *See Bond*, 2015 UT 88, ¶¶ 44–46.

¶15 Accordingly, because Saenz has failed to establish prejudice, a necessary element of his plain error claim, we must affirm his convictions.[4] *See Dunn*, 850 P.2d at 1209 ("If any one of these requirements is not met, plain error is not established.").

—————

4. We also question whether Saenz could prove prejudice, given the evidence of guilt in this case and the trial court's statement during the colloquy and later instruction to the jury that it could not hold Saenz's decision not to testify against him. Indeed, Saenz concedes that the evidence against him is "overwhelming." And our supreme court has stated that ample evidence of guilt and a curative instruction are considerations that, if present, can actually render an error related to allegedly impermissible commentary on a defendant's decision not to testify harmless. *See generally State v. Maestas*, 2012 UT 46, ¶¶ 161–65, 299 P.3d 892 (noting that the prosecutor's comment on defendant's decision not to testify was harmless where it was "unclear whether the prosecution was referring to Mr. Maestas or to his codefendants," where the jury was "explicitly instructed that it should not consider a defendant's choice not to testify," and where there was a "wealth of evidence implicating Mr. Maestas in [the victim's] murder"); *State v. Tillman*, 750 P.2d 546, 555 (Utah 1987) ("In the face of overwhelming evidence of defendant's guilt, together with the fact that the comments were isolated as opposed to extensive and the fact that the trial judge specifically instructed the jury 'that no presumption adverse to [defendant Tillman] is to arise from the mere fact that he does not place himself upon the witness stand,' we do not hesitate in holding any error was harmless beyond a reasonable doubt." (alteration in original) (footnotes omitted)).