2020 UT App 81

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PHILIP BOSWELL CASE,
Appellant.

Opinion
No. 20180361-CA
Filed May 29, 2020

Fourth District Court, Provo Department
The Honorable Kraig Powell
No. 151400499

Stephen W. Howard and Bradley J. Henderson,
Attorneys for Appellant

Sean D. Reyes and Jonathan S. Bauer, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion, in which JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Philip Boswell Case appeals his convictions on seven counts of sexual exploitation of a minor. We affirm.

## BACKGROUND

¶2 In early 2012, Case sold an external computer hard drive to a Utah woman (Buyer) via an online classified advertisement. In November 2013, having used the drive only infrequently, Buyer's husband discovered "a lot" of child pornography featuring digital images of "young girls, some of them scantily clad, posed in provocative postures," stored in the drive's recycle bin. After

examining the thumbnail images[1] with Buyer, the couple reported the matter to law enforcement. Agents from the Utah Attorney General's Office visited the couple's home and confiscated the drive.

¶3    Buyer could not remember the name of the person who sold the drive, but an agent was able to identify Case from work-related and family photos on the hard drive. All the digital images on the drive had last been accessed in late 2011—two to three months before Case sold the drive.

¶4    After confirming that several of the images on the drive were child pornography, agents interviewed Case on the porch of his house in early June 2014. Case confirmed that he sold the hard drive to Buyer, but he denied knowing how any of the child pornography could have gotten there. After about fifteen or twenty minutes, Case's wife (Wife) joined them on the porch. When she learned that the agents were investigating child pornography, she said that Case was "not into that. He's not into little girls. . . . [H]e's into feet. . . . [H]e's into pantyhose." Agents explained that they found images of adult foot pornography on the drive, and Case admitted, "If you see feet photos, I'm into that." But he denied that he viewed pornographic images of underage individuals. Wife consented to a search of the family's computers, and Case provided the agents with his work laptop and its password. The search of the laptop revealed at least two images of child pornography that had been downloaded three days earlier. The agents also found a Tor browser on Case's

---

1. "Thumbnails, or miniature computer graphics of the files within a computer folder, are an organizational format that allows the user to quickly view the folder's contents. A thumbnail of a photograph file is a miniature version of the saved image." *State v. Newland*, 2010 UT App 380, ¶ 3 n.1, 253 P.3d 71 (quotation simplified).

laptop.[2] The agents confiscated the laptop, and a forensic search conducted after obtaining a search warrant revealed additional images of child pornography, much of it featuring feet, shoes, and pantyhose. In addition to child pornography, many images of adult pornography, child erotica, and images of young girls in hosiery or shoes were found on both the laptop and the hard drive.

¶5      Case was charged with seven counts of sexual exploitation of a minor related to the possession of the images of child pornography located on the hard drive and found on his laptop computer. *See* Utah Code Ann. § 76-5b-201(a) (LexisNexis Supp. 2019) ("A person is guilty of sexual exploitation of a minor: (a) when the person: (i) knowingly produces, possesses, or possesses with intent to distribute child pornography; or (ii) intentionally

---

2. A Tor browser "is primarily used to gain access to the dark web and help maintain the user's anonymity while browsing on the Internet." *State v. White*, No. A-4971-17T4, 2019 WL 2375391, at *2 (N.J. Super. Ct. App. Div. June 5, 2019) (quotation simplified). "Tor and its cousin networks collectively make up the dark web family. Tor was born to anonymize Internet usage. Specifically, Tor provides anonymity to Internet users by masking their user data and hiding information by funneling it through a series of interconnected computers. Over 1000 servers exist in the Tor network worldwide." Whitney J. Gregory, Comment, *Honeypots: Not for Winnie the Pooh but for Winnie the Pedo—Law Enforcement's Lawful Use of Technology to Catch Perpetrators and Help Victims of Child Exploitation on the Dark Web*, 26 Geo. Mason L. Rev. 259, 276–77 (2018) (quotation simplified); *see also United States v. Bateman*, 945 F.3d 997, 1000 (6th Cir. 2019) ("Beneath [the] easily accessible world [of the standard Internet] lies a wholly separate world of cyber content, known colloquially as the 'dark-web,' which is largely inaccessible to average Internet users. Within this space, a number of cyber outlets distribute questionable content." (quotation simplified)).

distributes or views child pornography . . . .").[3] Specifically, two of the charged counts were related to illegal pornographic images found on the hard drive that were alleged to have been possessed or viewed by Case on or about December 1, 2011, and five of the charged counts were related to illegal pornographic images found on Case's laptop computer that were alleged to have been possessed or viewed by him on or about June 5, 2014. The amended Information did not link each count with the possession of a specific image; rather, the charging document merely identified counts one and two as related to Case's possession of child pornography in 2011 and counts three through seven as related to his possession in 2014.

¶6      Prior to trial, Case requested that the State provide notice of any rule 404(b) evidence it would seek to admit at trial. *See* Utah R. Evid. 404(b). The State initially sought to admit between twenty-one and twenty-eight images of child pornography. The State also planned to introduce a minimum of twenty-eight legal images depicting child erotica; children wearing nylons, pantyhose, and other various clothing; adults involved in foot and pantyhose fetishes; and a cartoon image of a child being sexually assaulted (collectively, legal erotica) to show that Case "engaged in a general course of overlapping sexual conduct." Specifically, the State argued that Case's "sexual fetishes and sexual behavior with his wife are narrowly defined and have very strong nexus with the pantyhose, foot fetish, and sexual interest images found on [Case's] computer devices that directly go toward the elements of the charged offenses." Alternatively, the State offered the evidence of the legal erotica for the permissible purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident under rule 404(b). Case filed a motion in limine to exclude from the jury's view the twenty-eight images of legal erotica identified in the State's notice, arguing that they were irrelevant or offered for

_____

3. Because there have been no substantive changes to the relevant statutory provisions, we cite the most current version of the code throughout this opinion.

improper character purposes. The trial court heard oral argument and denied Case's motion in an oral ruling from the bench.[4]

¶7      On the first and second days of trial in February and March 2018, during a discussion of how the court should instruct the jury on how it should consider the images of legal erotica, Case renewed his objection to the admission of those images, asking, "If they are not child porn[ography], what specifically are they . . . what relevance does it have to be introduced?" The trial court responded that it had ruled that the images of legal erotica were admissible under rule 404(b) for a proper purpose: to show "motive, opportunity, lack of mistake, lack of accident . . . [and] all of those do meet the qualifications of the rule in [the court's] ruling." Case and the State stipulated that the jury would be instructed that the images of legal erotica were not introduced as proof of a crime; rather, the evidence was being offered for a proper purpose under rule 404(b). Ultimately, the trial court judge ruled,

> I stand by my ruling that the court has made a [rule 404(b)] determination after a long hearing or two. And the court has determined that the evidence . . . the prosecution intends to introduce in this case of other connections of defendant through circumstantial evidence for lack of a better term of these other [images of legal erotica] are admissible for purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake and lack of accident.

¶8      At trial, Case's primary contention was that the State was unable to show who was "responsible for putting the alleged child

---

4. The record does not contain the transcript of the hearing at which Case's motion was denied. There was no written order, and the court's minute entry merely states that Case's counsel and the prosecutor addressed the court, conversation ensued, and the court gave findings and denied Case's rule 404(b) motion.

pornography on both the hard drive and the laptop." He argued that the State could show only circumstantial evidence linking him to the possession of the illegal images and could not prove directly that he was "the one [who was] at the computer" when "the child pornography [was] being downloaded." Case further argued that there was an "apparent disconnect" between the images of child pornography on the hard drive and on his laptop and the other evidence that showed images of legal erotica.

¶9 Wife, who had divorced Case by this time, testified that Case had a "foot fetish" and that "he liked feet and pantyhose." She revealed that during their marriage, Case liked to rub his penis on her pantyhose-clad feet. Sometimes Case did this while Wife was sleeping, and she once caught him taking pictures of this activity. Wife also revealed that Case frequently looked at "foot websites and pantyhose websites" and was very secretive about his Internet-viewing activities. But Wife also testified that she had never observed Case viewing images of children.

¶10 In addition to testimony from investigating agents and Case's family, and as part of its case-in-chief, the State offered the evidence of the legal erotica and illegal pornographic images seized from Case's laptop and the hard drive to prove that Case was the one who possessed or viewed the child pornography. At the end of the third day of trial, before the State published the images and rested its case, so that the jury did not have to view each exhibit individually, Case offered to stipulate that the images identified by the State as child pornography met the statutory definition of child pornography:

> We are willing to concede that point and stipulate to it, obviously, for purposes of judicial efficiency, obviously, also for purposes of saving the jury who has already indicated to us in chambers through voir dire, that they have an interest in not looking at the child pornography and would be satisfied with some state witness describing the child pornography, explaining the data behind it, and

saving them from viewing something that they clearly, when you watched the jury look at this first image, did not want to see.

Case further argued that under rule 403 of the Utah Rules of Evidence, he would be prejudiced if the jury was able to view each image of child pornography:

> What we are objecting to is the presentation of the evidence under [rule] 403 in offering a substitute way for the evidence to be presented. The evidence can still get in as descriptions and coupled with the testimony of an individual that personally worked on viewing these images. . . . And [the witness] can go into whatever detail [the prosecutor] wants them to go into.
>
> But this court is well within its authority under [rule] 403 to make a ruling on this matter and say that there is no significant probative value here in showing these images to the jury. And if there is any probative value remaining, it is so significantly outweighed by the danger of prejudice to not only the jury and their ability to objectively and impartially weigh this evidence, because they will become so angered and inflamed by what they have seen, but it is also unnecessarily cumulative and, frankly, a waste of time. [Rule] 403 recognizes that that is a proper reason to object to the evidence being presented as is.

¶11    The State responded that it had the right to present evidence to prove its case and the jury had "a need to see how well all of these pictures match [Case's] fetishes. And that is [the State's] whole case. And not showing those pictures undermines everything of how [the State has] set up to attack this case." The trial court denied Case's offer to stipulate that the images were

child pornography and his motion to exclude the images under rule 403. In summarizing its ruling on the issue, the court stated,

> [T]he court is mindful of [the prosecutor's] explanation that the State's case here appears to rest on a relationship between some photographs that may not constitute child pornography . . . and the element images on which the jury could convict.
>
> It is quite obvious to [the court] that the State cannot pursue that theory if they don't present the images to the jury, because the whole theory rests on the fact that many of the images are similar to each other. And many of the images are similar to images that are not child pornography but have the common thread, the common theme of certain types of clothing, especially certain types of clothing.

And the State agreed with this characterization of the importance of the legal erotica with regard to the child pornography: "Here our whole case, as the court has indicated, is the nexus between [Case] and his uniqueness with his interests and his admissions of his interests with what is seen and being cataloged and stored."

¶12    Ultimately, fifty images of child pornography and legal erotica were admitted into evidence at trial. The jury was instructed that thirteen (eleven from the hard drive and two from the laptop) of those images were "legal images" and "not child pornography."[5] The jury was further instructed that these thirteen images of legal erotica were "not admitted to prove a character trait of [Case] or to show that he acted in a manner consistent with

_____

5. Four of these images depicted stimulation of a penis by feet, three wearing pantyhose; five depicted legal images of young girls wearing hosiery; and four were drawings, rather than photographs, of young girls being sexually abused or portrayed in a sexually explicit manner.

such a trait" and that it could consider the evidence "only for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The State identified the other thirty-seven images (twenty-eight from the hard drive and nine from the laptop) as constituting child pornography.[6] Instruction 13 informed jurors that they must "reach a unanimous agreement on a verdict" and that "every single juror must agree with the verdict before [Case could] be found 'guilty' or 'not guilty.'"

¶13   The jury convicted Case on seven counts of sexual exploitation of a minor. The verdict form did not require special findings; it merely required the jury to reach a verdict on whether Case was guilty of each count as charged in the amended Information.

ISSUES AND STANDARDS OF REVIEW

¶14   Case first argues that the trial court erred in admitting images of legal erotica and evidence of marital sexual activities. With regard to the admission of this evidence, "we afford district courts a great deal of discretion in determining whether to admit or exclude evidence and will not overturn an evidentiary ruling absent an abuse of discretion." *State v. Klenz*, 2018 UT App 201, ¶ 30, 437 P.3d 504 (quotation simplified). But here we are hard-pressed to determine whether the trial court abused its discretion in admitting the challenged evidence because Case has failed to include in the record on appeal the transcript of the motion-in-limine hearing at which the trial court denied Case's motion to exclude the evidence. "When crucial matters are not included in

---

6. Seven of these images were graphic—one depicted child rape, another showed child sodomy, and five featured sexually explicit displays of underage female genitalia. Two of these explicit images were found on the hard drive and five were found on Case's laptop. The other thirty images (two from the laptop and twenty-eight from the hard drive) depicted scantily clad young girls, some of whom were wearing hosiery.

the record, the missing portions are presumed to support the action of the trial court." *State v. Pritchett*, 2003 UT 24, ¶ 13, 69 P.3d 1278 (quotation simplified).

¶15    Case argues in the alternative that his trial counsel was ineffective for failing to object to the admission of the legal erotica and to the admission of the evidence of Case's sexual relationship with Wife. "When a criminal defendant raises a claim of ineffective assistance of counsel for the first time on appeal, there is no trial court ruling to examine. We must therefore decide, as a matter of law, whether [the defendant] received constitutionally ineffective assistance of counsel." *State v. Burnett*, 2018 UT App 80, ¶ 19, 427 P.3d 288 (quotation simplified). But to the extent that Case's complaint that his counsel was ineffective for not objecting to the admission of the images of legal erotica or for not challenging the testimony of Wife was addressed by the trial court's pretrial ruling on his motion in limine, we "presume the regularity of the proceedings below" in the absence of a transcript, *Pritchett,* 2003 UT 24, ¶ 13, and will not address these issues on appeal.[7]

¶16    Case's final argument on appeal is that the trial court erred by failing to instruct the jury on the requirement that it must reach a unanimous verdict. Case did not object to the court's instructions or propose a specific instruction or special verdict form. Therefore, this issue was not preserved, and we review it for plain error. *See State v. Reigelsperger*, 2017 UT App 101, ¶ 38, 400 P.3d 1127. To succeed under the plain error doctrine, Case must demonstrate not only that the trial court's failure to instruct

---

7. The presumption of regularity, applied in this case, is far from unreasonable. Based on the trial court's reference to what transpired at the hearing addressing Case's motion to exclude certain images of legal erotica, *see supra* ¶ 11, it is likely that the trial court accepted an argument advanced by the State that, given Case's denial of any knowledge of the child pornography, the fact that those images were interspersed among others readily attributable to Case, namely those featuring foot and hosiery fetish imagery, would go a long way in refuting Case's claim.

the jury that it needed to agree unanimously on each offense by linking each associated count to a specific image was error but also that the error should have been obvious to the trial court and "that the error was of such a magnitude that there is a reasonable likelihood of a more favorable outcome for the defendant." *State v. Alires*, 2019 UT App 206, ¶ 26, 455 P.3d 636 (quotation simplified).

ANALYSIS

## I. Admission of Legal Erotica and Evidence of Sexual Interests

¶17 Case contends that the trial court erred in admitting images of legal erotica and evidence of his marital sexual activities, as well as his sexual interest in feet and hosiery. He argues that the use of this evidence "constituted an improper use of character evidence" and "did not support any proper non-character purpose." Rather, Case argues that this evidence "acted to inflame the passions of the jury, to create prejudice against [him], and to convince the jury that his sexual interests and addictions must have caused him to view and possess child pornography."[8]

¶18 But Case fails to acknowledge on appeal that he filed a pretrial motion seeking to exclude the twenty-eight images of legal erotica that the State identified in its rule 404(b) notice and that the trial court denied his motion in an oral ruling from the bench. Case also fails to acknowledge that the trial court

---

8. On appeal, Case suggests that certain statements made by the prosecutor during opening and in closing that Case suffered from a pornography addiction that made him more likely to possess child pornography were improper. But Case does not argue that these statements constituted prosecutorial misconduct. Even if he did make such argument, "to demonstrate prosecutorial misconduct, a defendant must show that the actions or remarks of counsel call to the attention of the jury a matter it would not be justified in considering in determining its verdict." *State v. Bair*, 2012 UT App 106, ¶ 32, 275 P.3d 1050 (quotation simplified).

reaffirmed at trial its prior ruling on his motion to exclude under rule 404(b) and stated again that the images of legal erotica were admissible.

¶19    A party bringing a claim of error before this court "has the duty and responsibility to support such allegation by an adequate record." *State v. Harper*, 2006 UT App 178, ¶ 21, 136 P.3d 1261 (quotation simplified). When an appellant fails to provide an adequate record on appeal, this court "presume[s] the regularity of the proceedings below." *State v. Pritchett*, 2003 UT 24, ¶ 13, 69 P.3d 1278. And "when crucial matters are not included in the record [on appeal], the missing portions are presumed to support the action of the trial court." *State v. Chettero*, 2013 UT 9, ¶ 32, 297 P.3d 582 (quotation simplified). Without the transcript of the hearing the trial court held on Case's rule 404(b) motion to exclude the images of legal erotica, and without a record of the reasons why the trial court denied Case's motion, we cannot review the basis of the trial court's decision to determine whether the trial court abused its discretion in denying the motion.

¶20    Case also argues that his trial counsel provided ineffective assistance in failing to object to the admission of the additional images of legal erotica and sexual-interest evidence. But as set forth above, trial counsel *did* object to that evidence by filing a written motion prior to the trial and argued at a hearing before the trial court that the court should exclude that evidence from being presented to the jury. To the extent that Case alleges his trial counsel should have done more or presented a different argument on this issue, he has not provided a record of the hearing at which the court denied his motion, so we cannot analyze the correctness of the trial court's ruling or the effectiveness of trial counsel's representation. Accordingly, we "presume the regularity of the proceedings below" and affirm the trial court's ruling. *See Pritchett*, 2003 UT 24, ¶ 13.

## II. Adequacy of the Jury Instructions

¶21    Case also contends that the court committed plain error in failing to instruct "the jury to be unanimous as to which factual

elements violated each count, which victim applied to each count, when each count was violated or where they were violated." *See* Utah Const. art. I, § 10 ("In criminal cases the verdict shall be unanimous."). "Where the evidence indicates that more than one distinct criminal act has been committed but the defendant is charged with only one count of criminal conduct, the jury must be unanimous as to which act or incident constitutes the charged crime." *State v. Furseth*, 233 P.3d 902, 904 (Wash. Ct. App. 2010); *see also State v. Saunders*, 1999 UT 59, ¶ 60, 992 P.2d 951 ("Jury unanimity means unanimity as to a specific crime and as to each element of the crime."); *State v. Noltie*, 809 P.2d 190, 198 (Wash. 1991) (en banc) ("In *multiple acts* cases where several acts are alleged, any one of which could constitute the crime charged, the jury must be unanimous as to which act or incident constitutes the crime.").[9]

¶22     Here, the court did instruct the jury that it needed to reach a unanimous verdict on whether the State proved each charge beyond a reasonable doubt: "Because this is a criminal case, every single juror must agree with the verdict before the defendant can be found 'guilty' or 'not guilty.'" But the court's instruction did not specify that the jury needed to unanimously agree on each specific instance of sexual exploitation of a minor. *See State v. Hummel*, 2017 UT 19, ¶ 26, 393 P.3d 314. That is, the evidence the State presented at trial indicated that Case committed thirty-seven distinct or independent criminal acts over two distinct periods: twenty-eight images depicting child pornography were on the hard drive and dated from late 2011, and nine images depicting child pornography were on Case's laptop and dated from June

---

9. The State argues that Case cannot prevail on his claim of plain error because his trial counsel invited any error in the trial court's instruction by approving Instruction 13. But we agree with Case that his unanimity objection is not limited to Instruction 13, so trial counsel's approval of that instruction does not end our inquiry. The error of not instructing the jury that it must unanimously agree on the specific criminal act for each charge to convict should have been obvious to the trial court. *See State v. Saunders*, 1999 UT 59, ¶ 65, 992 P.2d 951.

2014. *See* Utah Code Ann. § 76-5b-201(3) (LexisNexis Supp. 2019) ("It is a separate offense under this section: (a) for each minor depicted in the child pornography; and (b) for each time the same minor is depicted in different child pornography."); *see also State v. Rasabout*, 2015 UT 72, ¶ 9, 356 P.3d 1258 ("[T]he allowable unit of prosecution for child pornography is each visual representation."); *State v. Morrison*, 2001 UT 73, ¶ 26, 31 P.3d 547 ("The clearest reading of the statute is that each individual 'visual representation' of child pornography that is knowingly possessed by a defendant constitutes the basis for a separate offense under section [76-5b-201] . . . . [The defendant's] possession of multiple photographs depicting child pornography constituted multiple violations of [the statute]." (quotation simplified)). Apparently as a matter of prosecutorial restraint, Case was charged with only seven counts of sexual exploitation of a minor related to his possession or viewing of these thirty-seven images of child pornography. Specifically, two counts in the amended Information were related to the images Case was alleged to have stored on the hard drive in 2011, and five of the counts were related to images found on Case's laptop computer in 2014. But the State did not specifically link any of the counts to any specific image among the thirty-seven images that Case was willing to stipulate constituted child pornography. Rather, the jury was left with the task to identify and unanimously agree on seven specific acts of sexual exploitation of a minor from among the thirty-seven images that were identified as child pornography.[10]

¶23    We agree with Case that once the State failed to elect which act of possessing or viewing child pornography supported each charge in the amended Information, the jury should have been instructed that it needed to unanimously agree on which specific criminal act or image satisfied each charge to convict. *See State v. Alires*, 2019 UT App 206, ¶ 22, 455 P.3d 636; *see also State v.*

---

10. In fact, at trial, in reference to the thirty-seven images of child pornography that it planned to present to the jury, the prosecutor stated that "these are all being introduced and we are letting [the jury] pick which seven."

*Santos-Vega*, 321 P.3d 1, 7 (Kan. 2014) ("[E]ither the State must have informed the jury which act to rely upon for each charge during its deliberations or the district court must have instructed the jury to agree on the specific criminal act for each charge in order to convict."), *quoted in Alires*, 2019 UT App 206; *Hummel*, 2017 UT 19, ¶ 26 (stating that a unanimous verdict "requires unanimity as to each count of *each distinct crime charged* by the prosecution and submitted to the jury for decision"); *State v. Vander Houwen*, 177 P.3d 93, 99 (Wash. 2008) (en banc) ("To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." (quotation simplified)).

¶24 To prove plain error, as in the case here, "a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful. If any one of these requirements is not met, plain error is not established." *State v. Johnson*, 2017 UT 76, ¶ 20, 416 P.3d 443 (quotation simplified). Thus, even if we have concerns that the trial court erred in instructing the jury on the issue of unanimity, we do not need to resolve that issue if Case "has failed to demonstrate prejudice, the third prong of our plain error review." *See State v. Saenz*, 2016 UT App 69, ¶ 12, 370 P.3d 1278. And "an error is harmful if, absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, if our confidence in the verdict is undermined." *State v. Bond*, 2015 UT 88, ¶ 49, 361 P.3d 104 (quotation simplified).

¶25 To determine whether the defendant has shown a reasonable probability of a more favorable outcome, this court will consider the totality of the evidence presented to the jury. *See Alires*, 2019 UT App 206, ¶ 27 ("A verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." (quotation simplified)); *see also Saunders*, 1999 UT 59, ¶¶ 5, 13, 57, 65 (holding that "factual issues in the case" created a reasonable

likelihood that a proper unanimity instruction would have resulted in a more favorable outcome for the defendant).

¶26    Based on the record before us, we conclude that Case has not shown a reasonable likelihood of a different result at trial even though the court erred in instructing the jury as to unanimity. In other words, there was not "a reasonable likelihood of a more favorable outcome" for Case, nor is "our confidence in the verdict . . . undermined" in the presence of that error. *See Bond*, 2015 UT 88, ¶ 49 (quotation simplified). The fundamental issue before the jury was not whether the thirty-seven images found on the laptop and the hard drive constituted child pornography. Indeed, in an effort to prevent the State from showing the images to the jury, Case was "willing to concede . . . and stipulate to" the fact that each of the thirty-seven images found on the hard drive and laptop depicted at least one minor engaged in sexually explicit conduct. The issue for the jury to determine was whether Case was the person responsible for downloading and storing the images on those devices and whether he possessed or viewed the images depicting child pornography with the requisite intent. While it was error for the trial court not to instruct the jury that it needed to unanimously agree on which act formed the basis of each count on which Case was convicted, there is not a reasonable likelihood of a more favorable outcome for Case had the jury been thus instructed. Even if the jurors had been instructed that they each had to agree on which seven images satisfied each specific count set forth in the amended Information, because the jury found that the State had proved beyond a reasonable doubt that Case possessed and viewed child pornography, there is little doubt the jury would have selected the seven most sexually graphic depictions of child pornography among the thirty-seven that were admitted into evidence, *see supra* note 6, resulting in the same seven convictions for Case. *See State v. Percival*, 2020 UT App 75, ¶ 29 (concluding that there was not a "reasonable likelihood that the jury would not have agreed on any one victim" being stabbed when "the evidence overwhelmingly established" that three individuals were stabbed and the defendant was "the sole person wielding a knife" during a fracas).

¶27    Thus, we conclude that Case has not shown the prejudice necessary to obtain plain error relief in relation to an error in the trial court's unanimity instructions.

## CONCLUSION

¶28    We conclude that Case has not demonstrated that the trial court erred in its decision to deny Case's motion to exclude or that his trial counsel provided ineffective assistance in failing to object to the admission of certain evidence. And the jury instructions regarding unanimity, insofar as they were defective, did not prejudice Case.

¶29    Affirmed.

——————